## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
## GREENEVILLE DIVISION

| | | |
|---|---|---|
| MELISSA L. SOLOMON, | ) | |
| Petitioner, | ) | Nos. 2:05-CR-92 |
| | ) | 2:06-CR-83 |
| v. | ) | 2:08-CV-289 |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| Respondent. | | |

## MEMORANDUM OPINION

Melissa L. Solomon ("Solomon" or "petitioner"), a federal prisoner, has filed a "Motion Under 28 USC 2255 To Vacate, Set Aside, or Correct Sentence," [Doc. 71, No. 2:05-CR-92; Doc. 23, No. 2:06-CR-83]. The United States has responded in opposition, [Doc. 78, No. 2:05-CR-92; Doc. 27, No. 2:06-CR-83], and the matter is now ripe for disposition. The Court has determined that the files and records in the case conclusively establish that the petitioner is not entitled to relief under § 2255 and, therefore, no evidentiary hearing is necessary. For the reasons which follow, the petitioner's § 2255 motion lacks merit, and the motion will be DENIED.

### I. Procedural and Factual Background

Solomon and co-defendant, Mario Bautista, were charged on November 8, 2005, in a three count indictment with conspiracy to distribute and possess with the intent to distribute five kilograms or more of cocaine in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A) (Count One), possession with intent to distribute five kilograms or more of cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A) (Count Two), and possession of a firearm in furtherance of a drug trafficking offense in violation of 18 U.S.C. § 924(c) (Count Three), [Doc. 1, No. 2:05-CR-92]. Solomon was later charged in a separate single count information with money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i), [Doc. 1, No. 2:06-CR-83].

On November 6, 2006, a plea agreement, entered into between petitioner and the government on November 2, 2006, was filed with the Court, [Doc. 38, No: 2:05-CR-92; Doc. 6, No: 2:06-CR-83], in which Solomon agreed to plead guilty to the single count information and to Count One of the indictment. Solomon's guilty pleas were entered and accepted by the Court on December 4, 2006. Filed along with the plea agreement was a "Stipulation of Facts:"

> The United States of America, by and through its counsel, David C. Jennings, Assistant United States Attorney for the Eastern District of Tennessee, the defendant, Melissa Solomon, and her attorney, J. Russell Pryor, stipulate to the following facts:
>
> 1. Between approximately January, 2003, and November 7, 2005, the defendant conspired with Mario Bautista and others to distribute cocaine hydrochloride in and around Morristown, Tennessee. Bautista had sources of supply of cocaine in other states such as Georgia and Texas; and would receive multiple kilogram shipments of cocaine in Morristown from time to time. The defendant and Bautista would then distribute the cocaine in kilogram or lesser amounts to other coconspirators in the area, one of which was Nathaniel Allen.
>
> 2. On November 7, 2005, federal search warrants were executed at the residence of the defendant and Bautista in Morristown, as well as another location where they stored drugs. The search of the residence led to the seizure of five (5) kilograms of cocaine, and the search of the other residence led to the seizure of approximately one-fourth kilogram of cocaine and a firearm. Records were also seized which revealed that the defendant and Bautista had laundered some of the proceeds of their drug trafficking through the purchase of vehicles from automobile dealerships.
>
> 3. On December 8, 2003, the defendant went to Morristown Ford, Inc., in Morristown, to purchase a pickup truck for Bautista. Bautista had provided her with approximately $41,305 in United States currency with which to purchase a 2004 Ford F150 pickup truck. The truck was purchased solely with cash, which the defendant acknowledges that she knew was the proceeds of trafficking in cocaine. The defendant further acknowledges that this financial transaction affected interstate commerce.

2

4. For sentencing purposes, the United States and the defendant agree that she will be held accountable for the distribution of between fifteen(15) and fifty(50) kilograms of cocaine hydrochloride, which results in a base offense level under the United States Sentencing Guidelines of 34. The defendant acknowledges that she understands that she will receive a two-level enhancement for possessing a firearm in furtherance of the conspiracy, and that her plea to the money laundering charge in the Information will result in a further two-level enhancement under the United States Sentencing Guidelines. Finally, the United States agrees that, under the facts of this case, the defendant is not an organizer, leader, manager or supervisor of others in the offense.

[Doc. 39, No. 2:05-CR-92; Doc. 8, No. 2:06-CR-83]

Additional facts were set forth in the presentence report ("PSR"), and are accurately

set forth in the government's response:

During an investigation into drug trafficking activities in the Morristown area, law enforcement officials arrested an individual named Dewey Lynn Phillips, who began cooperating. (PSR at ¶¶ 13-14.) Phillips told the officers that he was acquiring approximately fifteen kilograms of cocaine a month from an Hispanic man in Morristown. (*Id.* at ¶ 14.) Subsequently, Mario Bautista and petitioner were arrested and petitioner immediately began cooperating. Petitioner told the officers that she had known Bautista for about six years and began driving with him to Atlanta in one car and then they would drive a different car back to Morristown. (*Id.*) In approximately 2001 or 2002, petitioner learned that the cars they were driving back to Morristown had secret compartments in them and that they were transporting hidden drugs and money. (*Id.*) Once petitioner knew that they were transporting drugs, Bautista began paying her $3,000 per trip. (*Id.*)

Petitioner told the officers that approximately two weeks before her arrest, ten kilograms of cocaine had been delivered to her and Bautista at their residential trailer in Morristown. (*Id.*at ¶ 15.) Petitioner and Bautista took the cocaine to a different house, dug a hole in the basement, and hid the drugs there. When they needed cocaine, Bautista would go to the house, dig up a kilogram, weigh out what was needed, bury the remainder, and then repeat the process until the entire kilogram was distributed. (*Id.*) At the time of her arrest, petitioner stated that five kilograms of cocaine remained

3

buried in the basement. (*Id.*) Based on this information, officers executed a search warrant at that house and seized the five kilograms of cocaine. (*Id.*)

Petitioner stated that she and Bautista dropped out of the drug business for awhile in 2003 but became re-involved in 2004. (*Id.* at ¶ 14.) Petitioner said that between 2003 until February or March 2004, she and Bautista distributed approximately ten kilograms of cocaine a week to Dewey Lynn Phillips. (*Id.* at ¶ 15.) Petitioner also provided information as to coconspirator Nathaniel Allen, who was buying cocaine from Bautista, and whom petitioner had heard had paid someone to murder informant Don Wilder. (*Id.* at ¶ 14.)

[Doc. 78, No. 2:05-CR-92, pp. 2-3].

Upon her arrest, and before signing a plea agreement, Solomon agreed to cooperate immediately. Upon debriefing, Solomon admitted to trafficking in far greater quantities of cocaine than the government could prove at the time. Before the signing and filing of the plea agreement and entry of her guilty pleas, Solomon testified on behalf of the defendant in the case of *United States v. Michael Vassar*, No. 2:05-CR-75. Prior to that testimony, the Court held a jury-out hearing and advised Solomon of her Fifth Amendment rights and that, if she testified, her testimony could later be used against her in a trial or at sentencing, [Doc. 44-2, No. 2:05-CR-92]. Solomon acknowledged that she understood her rights, declined to invoke her Fifth Amendment rights, and testified under oath that she and Bautista provided Stacy Phillips with approximately 5-10 kilograms of cocaine per week for about four months in 2003 and provided Lynn Phillips with 10 kilograms of cocaine per week for about eight months. *Id.* Solomon did not reveal her intent to testify at the trial of Vassar to the Assistant United States Attorney handling her case and apparently did not inform her lawyer, although she advised the Court at the time that she had done so and that he disagreed with her decision.

After the filing of the plea agreement, the Court set the matter on its docket for

4

November 20, 2006. Because the stipulation filed with the plea agreement differed dramatically from Solomon's testimony at the Vassar trial, the Court indicated that it would not accept the guilty pleas and reset the matter for December 4, 2006. At the December 4 hearing, both the petitioner and the government urged the Court to accept petitioner's guilty pleas, notwithstanding her dramatically different testimony at the Vassar trial. The government urged the Court to accept the guilty pleas because, at the time the government had agreed to the disposition of the case outlined in the plea agreement, it could not have proved Solomon's involvement in the much larger quantity of cocaine. As noted above, the Court ultimately agreed to accept Solomon's guilty pleas and her pleas were entered on December 4.

The Court ordered the preparation of a PSR which was disclosed on February 20, 2007. In calculating petitioner's offense level, the PSR held her accountable for the amount of drugs which were set forth in the stipulation of facts entered into at the time of the plea agreement, not the greater amount she testified to at the Vassar trail. Pursuant to the parties' stipulation, a two level enhancement was applied pursuant to USSG § 2D1.1(b)(1) because of the presence of the firearm at the time the cocaine was seized, resulting in an offense level of 36. As to the money laundering count, the offense level, after a two level enhancement under § 2S1.1(b)(2)(B) was 38. Using this higher adjusted offense level, and applying a three level reduction for acceptance of responsibility, the PSR determined petitioner's total offense level to be 35 which, with a criminal history category of I, resulted in an advisory guidelines range of 168-210 months. Neither petitioner nor the United States objected to the PSR.

After the PSR was prepared and prior to sentencing, petitioner was called as a witness, pursuant to her plea agreement with the United States, in the case of *United States v.*

5

*Aguirre*, No. 2:06-CR-76. She testified during that trial regarding her knowledge of the drug trafficking activities of Alfonso Chaves Rojas and Tobias Aguirre, including undercover cocaine buys she made from them during the investigation. On cross-examination, Solomon was predictably asked about her testimony during the Vassar trial and the vastly different drug quantity testified to during that case from that which she had stipulated to at the time of the entry of her guilty plea. Somewhat incredibly, Solomon testified at the Aguirre trial that she had testified in the Vassar case at the request of defendant Vassar's attorney in order to receive a sentencing benefit, that she testified as she was directed by Vassar's attorney based on his promise that such testimony would result in a downward departure and that her testimony was only "half and half" truthful. [1]

On October 23, 2007, the United States filed a motion for downward departure pursuant to USSG § 5K1.1, [Doc. 60, No. 2:05-CR-92], and, without making any specific recommendation, asked that the Court sentence petitioner to a term of imprisonment that took into account her cooperation with the government. At sentencing, although the United States expressed its frustration with petitioner's actions, it nevertheless fulfilled its promise contained in the plea agreement, advised the Court of petitioner's cooperation, and urged the Court to grant the motion for downward departure. Aside and apart from the issue related to the motion for downward departure, the Court *sua sponte* raised the question at sentencing of whether the petitioner was entitled to a three-level reduction in her offense level for acceptance of responsibility and whether the two-level enhancement for obstruction of justice might apply based on her perjured testimony. After argument, the Court found that the petitioner was not entitled to a reduction for acceptance of

---

[1] Solomon specifically testified that her testimony at the Vassar trial regarding the quantity of drugs sold to Stacy and Lynn Phillips was not true.

6

responsibility but declined to enhance the offense level by two levels for obstruction, resulting in an applicable advisory guidelines range of 235-293 months. After noting that the United States could have chosen to withdraw from the plea agreement with the petitioner based on her actions and its discretion to either grant or deny the motion, the Court granted the motion for downward departure, departed downward by three levels and arrived at an advisory guideline of 168-210 months.

After carefully considering the factors set forth in 18 U.S.C. § 3553(a), the Court imposed a sentence of 168 months. Judgment was entered on November 19, 2007, [Doc. 66, No. 2:05-CR-92; Doc. 20, No. 2:06-CR-83], and no direct appeal was filed. The instant motion was then timely filed on October 27, 2008.

## II. Standard of Review

This Court must vacate and set aside petitioner's sentence if it finds that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, . . ." 28 U.S.C. § 2255. Under Rule 4 of the Governing Rules, the Court is to consider initially whether the face of the motion itself, together with the annexed exhibits and prior proceedings in the case, reveal the movant is not entitled to relief. If it plainly appears the movant is not entitled to relief, the court may summarily dismiss the § 2255 motion under Rule 4.

When a defendant files a § 2255 motion, she must set forth facts which entitle her to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States,* 285 F.2d 733, 735 (6th Cir. 1961). "Conclusions, not substantiated by allegations of fact with some probability of

7

verity, are not sufficient to warrant a hearing." *O'Malley*, 285 F.2d at 735 (citations omitted). A motion that merely states general conclusions of law without substantiating allegations with facts is without legal merit. *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959); *United States v. Johnson*, 940 F. Supp. 167, 171 (W.D. Tenn. 1996). To warrant relief under 28 U.S.C. § 2255 because of constitutional error, the error must be one of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted) (§ 2254 case); *Clemmons v. Sowders*, 34 F. 3d 352, 354 (6th Cir. 1994). *See also United States v. Cappas*, 29 F.3d 1187, 1193 (7th Cir. 1994) (applying *Brecht* to a § 2255 motion). If the sentencing court lacked jurisdiction, then the conviction is void and must be set aside. *Williams v. United States*, 582 F. 2d 1039, 1041 (6th Cir.), *cert. denied*, 439 U.S. 988 (1978). To warrant relief for a non-constitutional error, petitioner must show a fundamental defect in the proceeding that resulted in a complete miscarriage of justice or an egregious error inconsistent with the rudimentary demands of fair procedure. *Reed v. Farley*, 512 U.S. 339, 354 (1994); *Grant v. United States*, 72 F. 3d 503, 506 (6th Cir.), *cert. denied*, 517 U.S. 1200 (1996). In order to obtain collateral relief under § 2255, a petitioner must clear a significantly higher hurdle than would exist on direct appeal. *United States v. Frady*, 456 U.S. 152 (1982).

### III. Analysis and Discussion

Although difficult to interpret, Solomon's petition appears to raise three general grounds for relief. [2] First, Solomon appears to argue that she was induced to plead guilty by "an unfulfilled promise of the prosecution to recommend leniency" if she fully cooperated in the case.

___

[2] Solomon also seems to raise some claims related to "entrapment" in her petition, [See Doc. 71, No. 2:05-CR-92, pp. 3-7]; however, the claim is neither legally nor factually developed and is not addressed by the Court.

Second, she appears to argue that enhancements in her offense level for money laundering and for possession of a firearm during the drug trafficking crime were improper. Third, she argues that the Court relied on "immaterial" facts at sentencing, including her perjury during the Vassar trial. The Court will address each of these issues more fully below; however, an initial question arises as to whether or not Solomon has waived her right to raise these issues in the context of a § 2255 motion.

Solomon entered into a plea agreement, later accepted by the Court, which expressly waived her right "to file a direct appeal or any motion or pleading pursuant to 28 U.S.C. § 2255," [Doc. 38, p 7, ¶ 15, No. 2:05-CR-92; Doc. 6, No. 2:06-CR-83], retaining only her "right to raise claims of ineffective assistance of counsel or prosecutorial misconduct." [3] The Court carefully examined Solomon at the change of plea hearing about her understanding of the waiver:

> THE COURT: Mr. Jennings, has the defendant waived any appeal rights or rights to file a § 2255 motion in this plea agreement?
>
> MR. JENNINGS: She has waived her rights to appeal the conviction and sentence as contained in paragraph 15 of her plea agreement, with the exception that she retains her rights to raise claims of ineffective assistance of counsel and prosecutorial misconduct.
>
> Q. All right. Ms. Solomon, do you understand that pursuant to your plea agreement with the government you have expressly waived certain rights to appeal or to collaterally attack your conviction or your sentence as just stated by the United States Attorney and as set out in paragraph 15 of your plea agreement?
>
> A. Yes.
>
> Q. Have you and your attorney discussed this waiver of your rights to appeal and your right to collaterally attack your

---

[3] Solomon does not phrase any of her claims as claims of prosecutorial misconduct or ineffective assistance of counsel.

conviction or your sentence in this case?

A.   Yes.

[Doc. 75, No. 2:06-CR-52,  Tr. of Proc., Dec. 4, 2006].

There is no doubt in the Sixth Circuit that a waiver of the right to collaterally attack a conviction or sentence in a plea agreement is valid and enforceable.  *See Watson v. United States*, 165 F.3d 486, 488-89 (6th Cir. 1999);  ("[W]e hold that a defendant's informed and voluntary waiver of their right to collaterally attack a sentence in a plea agreement bars such relief."); *Palmero v. United States*, 101 F.3d 702, 1996 WL 678222 (6th Cir. 1996).  The only prerequisite is that the waiver be made knowingly and voluntarily.  *Davila v. United States*, 258 F.2d 448, 451 ("When a defendant knowingly, intelligently and voluntarily waives the right to collaterally attack his or her sentence, he or she is precluded from bringing a claim of ineffective assistance of counsel based on 28 U.S.C. § 2255.")

Here, Solomon agreed to a broadly worded waiver of her right to raise any claim pursuant to 28 U.S.C. § 2255 except for claims of ineffective assistance of counsel and prosecutorial misconduct and she makes no claim that her waiver was anything other than knowingly, voluntarily and intelligently made.  Even if she made such claim, she cannot meet her burden of persuading the Court that she did not voluntarily enter into the plea agreement.  First of all, she has waived such an argument by failing to present it on direct appeal.  In this circuit, the "voluntariness and intelligence of the guilty plea can be attacked on collateral review only if first raised on direct review," *Hampton v. United States*, 191 F.3d 695, 698 (6th Cir. 1999), and allowing it to be raised in this proceeding would contravene the well-settled principle that habeas review is an extraordinary remedy and "will not be allowed to do service for an appeal." *Id*. at 698 (quoting *Reed v. Farley*,

512 U.S. 339, 354 (1994)).

Secondly, the record in this case establishes without question that Solomon's choice to enter into the plea agreement, and its waiver of her right to collaterally attack, was knowingly, intelligently and voluntarily made. Solomon affirmed under oath that she had read the plea agreement, fully understood its terms and that her attorney had explained all of the agreement's terms to her. The Court explicitly called the waiver provision of the agreement to the defendant's attention and she acknowledged that she had discussed the waiver with her attorney. Nothing in the record of the change of plea proceedings even remotely suggests that Solomon had any reservation or lack of understanding of the terms of the agreement, including the waiver, its meaning and effect.

Furthermore, as the government argues, even if Solomon's claims could somehow be construed as claims of prosecutorial misconduct, they fail on their face. Solomon has not alleged any action by the United States that could be considered prosecutorial misconduct and, in any event, she cannot show prejudice as a result of any action by the United States. She will not be permitted to avoid the application of the waiver provision "by artful pleading to evade the plain language in her plea agreement." *United States v. Coker*, 514 F.3d 562, 568 (6th Cir. 2008). As a result, Solomon has waived all of her sentencing objections in the plea agreement and her motion is subject to being denied for that reason alone.

Even if Solomon had not waived her right to collaterally attack her conviction or sentence, there are other reasons why her claims fail. First, she has procedurally defaulted the claims. Second, the claims fail on the merits.

A petitioner is procedurally barred from raising claims in a § 2255 motion, even those of constitutional magnitude, to which no contemporaneous object was made or which were not

11

presented on direct appeal. *United States v. Frady*, 456 U.S. 152, 167-68 (1982); *Nagiv v. United States*, 90 F.3d 130, 134 (6th Cir. 1996). Where a petitioner has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in a motion under § 2255 only if the defendant first demonstrates either cause for the default and actual prejudice or that she is actually innocent. *Bousely v. United States*, 523 U.S. 614, 622 (1998). The petitioner here makes no claim of actual innocence.

A claim of ineffective assistance of counsel may serve as cause excusing a procedural default. *See Elzy v. United States*, 205 F.3d 882, 884 (6th Cir. 2000). The procedural default rule does not apply to claims of ineffective assistance of counsel because such claims generally are not reviewable on direct appeal, as the record may be inadequate to review. *United States v. Kincaide*, 145 F.3d 771, 785 (6th Cir. 1998) "Section 2255 is not a substitute for a direct appeal, and thus a defendant cannot use it to circumvent the direct appeal process." *Regalado v. United States*, 334 F.3d 520, 527-28 (6th Cir. 2003) (citing *United States v. Frady* at 167-68). Furthermore, "the *Frady* cause and prejudice standard applies to a defendant who pleads guilty and first asserts a claim for relief in a collateral proceeding." *Ratliff v. United States*, 999 F.2d 1023, 1025 (6th Cir. 1993).

Solomon has procedurally defaulted all of the claims she has raised in this petition. She does not address the cause for her failure to pursue a direct appeal. Presumably, however, it was because of her waiver of her right to file a direct appeal in the plea agreement. Here, Solomon does not even attempt to show cause excusing the procedural default, even through a claim of ineffective assistance of counsel, nor does she attempt to establish any prejudice. Moreover, as stated above, Solomon fails on the merits as to each of the issues raised by her.

Solomon's first claim is a somewhat confusing claim for relief based on "unfulfilled

promise by prosecution warranted charges." More specifically, her claim appears to be that she

"was told by prosecution and federal task force agents that if [she] cooperated fully, [she would] be

afforded the opportunity of the least sentence imposed not increased sentence." Whether the Court

construes this as a claim of prosecutorial misconduct, a claim that the government has breached the

plea agreement, or a claim that the guilty pleas entered in this case were not knowing and voluntary,

the record clearly disputes Solomon's assertions.

First of all, in the plea agreement, based upon Solomon's agreement to "cooperate

fully, truthfully, and completely," the United States agreed that, "[a]t the time of sentencing, the

United States will bring to the Court's attention the nature, extent and value of the defendant's

cooperation. This information will be provided to the Court so that it may be considered in

determining a fair and appropriate sentence under the facts of the case." The United States further

agreed that "[i]f, in the opinion of the United States, the defendant renders substantial assistance

within the meaning of U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553(e), the United States will file a

motion pursuant to one or both of these provisions." Very importantly, the defendant acknowledged

her understanding that the United States had complete discretion in determining whether to file the

motion, that the decision whether to file the motion was not reviewable by the Court except in

limited circumstances, and that the extent of any departure "is within the sentencing judge's

discretion." Although Solomon did not comply with her agreement with the government, the

government nevertheless chose not to withdraw from the plea agreement and, in fact, fully

performed its obligations under the plea agreement. The government filed the motion for downward

departure, called to the Court's attention Solomon's cooperation, and advocated that the Court grant

the motion and depart downward. The government did not advocate for a recalculation of

13

Solomon's guideline range based on her conduct in testifying in the Vassar and Aguirre cases nor did the government seek an enhancement for her admitted perjury. There does not appear to be, therefore, any reasonable argument that there was any unfulfilled promise of leniency extended to the petitioner.

Further underscoring the Court's conclusion is Solomon's affirmation under oath at the change of plea hearing that no promises other than those contained in the plea agreement had been made by the government or its agents. When asked at the Rule 11 change of plea hearing whether "[a]side from the plea agreement you've entered into with the government, has any officer or agent of the government promised or suggested to you that you will receive a lighter sentence or any other form of leniency if you plead guilty?," Solomon answered an unequivocal "no." [Doc. 75, p. 10, No. 2:05-CR-92]. Further, Solomon acknowledged in her plea agreement that the plea agreement contained "the full and complete agreement and understanding between the parties . . ., and there are no other agreements, promises, undertakings, or understandings between the defendant and the United States." She testified at the change of plea hearing that she had read the plea agreement, that her attorney had explained its terms to her, that she fully understood those terms, and that she understood that the Court had the authority to impose a term of life imprisonment in her case.

One other provision of the plea agreement also supports the Court's finding. Solomon acknowledged in the plea agreement that she understood "that the Court has the authority to impose any lawful sentence in this case." She further acknowledged that the United States Sentencing Guidelines would be considered and that her sentence would be "based upon the entire scope of defendant's criminal conduct, defendant's criminal history, and pursuant to other factors

14

and guidelines as set forth in the sentencing guidelines and the factors set forth in 18 U.S.C. § 3553." That Solomon is dissatisfied with the sentence ultimately imposed is quite clear. Nothing in this record, however, supports any claim of misconduct on the part of the government or that her plea was anything other than knowing and voluntary. To the extent Solomon received a much higher sentence than she might have anticipated, that appears to be entirely of her own doing through her perjury in the Vassar case. Indeed, the Court acknowledged at petitioner's sentencing hearing that, through her negotiated plea agreement, including the agreement to cooperate and testify, she had placed herself in a position where she might very well receive a sentence below the applicable mandatory minimum sentence. It was, however, through her own actions that she ultimately failed to realize the full benefit of her bargain. The issue raised by the petitioner in this respect lacks any merit whatsoever.

Next, Solomon also makes a somewhat incomprehensible argument as to the applicability of certain guideline enhancements used in calculating her offense level and advisory guidelines range in the case. Specifically she objects to the two level enhancement from USSG § 2D1.1(b)(1) for possession of a dangerous weapon including a firearm) and an additional two level enhancement because of her guilty plea to the money laundering charge in the information. The obvious problem for the petitioner is that she stipulated in writing to each of the enhancements. Paragraph 4 of the "Stipulation of Facts" filed along with petitioner's plea agreement provides that "[t]he defendant acknowledges that she understands that she will receive a two-level enhancement for possessing a firearm in furtherance of the conspiracy, and that her plea to the money laundering charge in the Information will result in a further two level enhancement under the United States Sentencing Guidelines." The stipulation alone defeats petitioner's claims on these issues.

15

Aside and apart from the stipulation, however, each of the two challenged enhancements clearly applied to petitioner's guidelines calculation. Under § 2D1.1(b)(1), there is an increase in offense level "[i]f a dangerous weapon (including a firearm) was possessed." The enhancement applies if a weapon was present, "unless it is clearly and probable that the weapon was connected with the offense." USSG § 2D1.1 app. n. 3. Although the factual stipulation is not detailed in view of the stipulation that the enhancement would apply, the stipulation clearly establishes that a firearm was located at a residence where the defendant and Bautista stored drugs. Once the government establishes a defendant's possession, actual or constructive of a firearm during the commission of the drug trafficking offense, the burden shifts to the defendant to show that it clearly improbable that the weapon was connected with the offense. *United States v. Hill*, 79 F.3d 1477, 1485 (6th Cir.), *cert. denied*, 117 S. Ct. 158 (1996). In support of her argument, petitioner points to case law related to a prosecution under 18 U.S.C. § 924(c)(1). Those citations, however, are irrelevant on the question of whether or not the guidelines enhancement applies. Petitioner's argument with respect to the gun enhancement lacks merit.

As for the enhancement related to the money laundering offense, USSG § 2S1.1(b)(2), the defendant clearly stipulated that she knew the proceeds, i.e. $41,305 United States currency, used to purchase the 2004 Ford F-150 pickup truck was the proceeds of trafficking in cocaine. Petitioner's argument seems to be that she had no involvement in the underlying drug offense; yet, she pleaded guilty to involvement in that conspiracy itself. In any event, the enhancement clearly applied and Solomon's argument lacks merit.

Finally, the petitioner appears to argue that it was improper for the Court to consider her perjury during the Vassar trial and her lack of truthfulness at other important points in the

16

investigation in determining her sentence. As noted above, the United States fully fulfilled its obligations under the plea agreement and the Court in fact granted the government's motion for downward departure and departed downward by three levels, the same departure granted in co-defendant Bautista's case. Furthermore, it was the Court, not the United States, which took into account petitioner's perjury. The Court *sua sponte* found that petitioner was not entitled to an offense level for acceptance of responsibility in view of her perjury during the Vassar trial and her testimony during the Aguirre trial. Not only can the petitioner not show any error here, she expressly advised the Court that she understood that the Court would consider all of the facts and circumstances of her case in determining an appropriate sentence in the case. [4] Once again, it is the petitioner's own conduct which ultimately led to the sentence imposed in this case. Petitioner's claim related to her perjury fails as well.

## V.        Conclusion

For the reasons set forth above, the Court holds petitioner's conviction and sentencing were not in violation of the Constitution or laws of the United States. Accordingly, her motion to vacate, set aside or correct her sentence pursuant to 28 U.S.C. § 2255 will be DENIED and her motion DISMISSED.

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth

---

[4] Indeed, Congress has expressly provided that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661.

17

Circuit Court of Appeals disapproves of the issuance of blanket denials of certificates of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). The district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id*. at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Id*.

Under *Slack*, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." While this Court believes that its decision not to grant an evidentiary hearing is the correct holding, such holding is at least arguably debatable. Therefore, the Court will grant petitioner a certificate of appealability as to the question of whether or not the Court should have conducted an evidentiary hearing but not as to any other issue.

A separate judgment will enter.

ENTER:

s/J. RONNIE GREER<br>
UNITED STATES DISTRICT JUDGE

18